IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN W. MORRISON, | : | Civil Action No. 4:14-cv-0209 |
| | : | |
| Plaintiff, | : | |
| | : | (Judge Brann) |
| v. | : | |
| | : | |
| ACCUWEATHER, INC; | : | |
| BARRY MYERS; | : | |
| and | : | |
| VINCENT MCDONALD | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**
November 21, 2014

Defendants AccuWeather, Inc (hereinafter "AccuWeather"), Barry Myers

and Vincent McDonald. separately filed two Motions to Dismiss Plaintiff John W.

Morrison's Complaint for failure to state a claim upon which relief can be granted

pursuant to Rule 12(b)(6) of the Federal Rule of Civil Procedure.  Defs.' Mot.

Dismiss, Apr. 1, 2014, ECF No. 7 (hereinafter "Corp. Mot.") and ECF No. 8

(hereinafter "Ind. Mot.").  Plaintiff's Complaint, filed February 6, 2014, alleges

claims for breach of contract, violations of Pennsylvania's Wage Payment and

Collection Law, 43 P.S. § 260.1, *et seq* (hereinafter, the "WPCL"), fraudulent

misrepresentation and negligent misrepresentation.  Pl.'s Compl., Feb. 6, 2014,

ECF No. 1 (hereinafter "Pl.'s Compl.").  Defendant AccuWeather seeks to dismiss

1

all claims against it, except for the breach of contract claim. Corp. Mot. ¶ 1.

Defendants Myers and McDonald seek to dismiss Plaintiff's Complaint against

them in its entirety. Ind. Mot. ¶ 1.  The Court retains diversity jurisdiction pursuant

to 28 U.S.C. § 1332.  Consequently, Pennsylvania substantive law applies.  *See,*

*e.g.*, *Erie R. Co. v. Tompkins*, 304 U.S. 64, 91-92 (1938).

For the reasons discussed, Defendants' Motions to Dismiss are granted in

part and denied in part.  Count I for breach of contract is dismissed with prejudice

as to Defendants Myers and McDonald.  Count IV for negligent misrepresentation

is dismissed with prejudice as against all Defendants.  Count III for fraudulent

misrepresentation is dismissed without prejudice as against all Defendants with

leave to amend.  Defendants' Motions to Dismiss are denied with regards to

Plaintiff's claim in Count II for violations of the WPCL.

## I. BACKGROUND

On February 6, 2014, Plaintiff John W. Morrison initiated the above-

captioned civil action by filing a Complaint with this Court alleging breach of

contract, violations of Pennsylvania's WPCL, fraudulent misrepresentation and

negligent misrepresentation.

This case arises from the employment relationship between Plaintiff John

Morrison and Defendant AccuWeather, Inc.  On or about May 27, 2013, Plaintiff received an unsolicited telephone call from an executive recruiter, Rick Linde, informing Plaintiff of a job opportunity with Defendant AccuWeather, Inc., in State College, PA. Pl.'s Compl. ¶ 10.  Plaintiff was then employed as CFO of gen-E, a market-leading information technology company located in California. *Id.* ¶ 9. Plaintiff consequently conducted an interview via Skype with Mr. Linde and subsequently traveled to New York City to meet with him in person.  *Id.* ¶ 11-12.

As a result of these two favorable interviews, Plaintiff took part in an exhaustive interview process with Defendants, including Defendant McDonald, the Chief Human Resources Officer (hereinafter "CHRO") and Defendant Myers, the Chief Executive Officer (hereinafter "CEO"), for the position of CFO of AccuWeather. *Id.* ¶ 14-33.  This process included several telephone interviews, a few in-person interviews, and a four-hour-long psychological profile questionnaire, all of which spanned the course of several weeks.  *Id.*  During one of the telephone interviews with Defendant Myers, Plaintiff pointedly inquired as to Mr. Myers' plans for the future of AccuWeather, specifically the financial prospects of the company and the long-range business plans for AccuWeather. *Id.* ¶ 18.  Defendant Myers assured Plaintiff that Defendants' search was for a long-term CFO to

replace the current incumbent CFO as an agent to drive change and reform AccuWeather's financial policies and procedures from within the company and to strengthen the company and its position in the competitive marketplace. *Id.* ¶ 19.

Throughout all of the interviews with Defendants McDonald and Myers, both in-person and electronic/telephonic, Plaintiff stated and reiterated that in order to uproot his family in a move to Pennsylvania and to forego his then-existing employment relationship in California, Plaintiff needed security in a promise of long-term employment. *Id.* ¶ 30.  Defendants specifically assured Plaintiff that neither Defendants' leadership team nor Defendant AccuWeather's shareholders were considering sale, merger or other corporate transactions that could result in a material change of control of Defendant AccuWeather. *Id.* ¶ 32.  Furthermore, Defendants repeatedly provided reassurance that their long-range business plans were consistent with Plaintiff's repeated statements that he would only consider a long-term commitment to his engagement as CFO of Defendant AccuWeather. *Id.* ¶ 33.

On July 30, 2013, Defendants provided Plaintiff with an oral offer of employment for the CFO position at AccuWeather. *Id.* ¶ 34.  The oral offer provided for a minimum term of employment of two years, an annual salary of

4

$235,000 and guaranteed bonuses of $115,000 for year one and $125,000 for year two. *Id.* ¶ 35.  In addition, the oral employment offer provided for 100,000 Class B stock options during the first year, to be provided on the first day of employment and 150,000 Class B stock options during the second year, to be provided on the first anniversary of the employment start date. *Id.* ¶ 35.  Moreover, the oral offer included an allowance for out-of-pocket and incidental costs of moving Plaintiff and his family to Pennsylvania and payment for up to four months of temporary housing. *Id.* ¶ 36-38.  Finally, the oral offer provided for payment to Plaintiff if his employment was terminated early due to a corporate change in control. *Id.* ¶ 39.

On July 31, 2013, Plaintiff accepted the offer of employment with the caveat that his base salary would be changed to $250,000. *Id.* ¶ 40-42.  On August 2, 2013, Plaintiff received a written agreement which Defendants represented reflected the terms of the oral employment offer. *Id.* ¶ 43.

In preparation for his move to Pennsylvania and in reliance on Defendants representations regarding their long-term plans for the company, Plaintiff disposed of substantial and valuable electronic equipment as well as furniture and other property, and he undertook substantial repairs and improvements to his California property to prepare it for sale or rental. *Id.* ¶ 47-49.

When Plaintiff began work on September 9, 2013, he discovered that contrary to the repeated representations of Defendants Myers and McDonald, the incumbent CFO was still in a position at AccuWeather in which he was described to Plaintiff as responsible for "special projects." *Id.* ¶ 53.  Defendants stated that the former CFO would remain on-site and continue to be located in his executive suite offices, which were still identified as the offices of the CFO, while Plaintiff was assigned to "temporary" office space located in the human resources department. *Id.* ¶ 55-56.  Furthermore, it was not until three days after the commencement of Plaintiff's employment that a memorandum was issued to all AccuWeather employees that formally introduced Plaintiff as the new CFO. *Id.* ¶ 58.

Moreover, Plaintiff came to learn within days of his arrival that he was being excluded from chief executive team meetings and emails. *Id.* ¶ 62.  To address this confusion, Plaintiff arranged with Defendants Myers and McDonald to personally meet with all of the chief executives and key divisional executives over the next two weeks to explain his role as CFO and his plans for the position, as well as to learn their plans for their respective areas of responsibility and discuss how they could all work together for the betterment of the company as a whole. *Id.* ¶ 64.

6

Plaintiff communicated the results of these meetings to Defendant Myers, who stated that he appreciated Plaintiff's efforts to address the executives' confusion and concerns regarding Plaintiff's role within the company. *Id.* ¶ 65.

On September 22, 2013, thirteen days after starting the new CFO job at AccuWeather, Defendant Myers called Plaintiff to notify him that he was immediately terminated from his employment as CFO, despite Defendant Myers' agreement that Plaintiff had the skills, knowledge, and expertise to do the job as it was offered to Plaintiff. *Id.* ¶ 66-67. Defendant Myers stated that he would not reconsider immediate termination because he was concerned that an "executive," who Defendant Myers would not identify, had expressed concern that Defendants "brought in" Plaintiff because AccuWeather was "being sold." *Id.* ¶ 70. On September 23, 2013, Plaintiff received a written memorandum from Defendant Myers documenting Plaintiff's termination of employment, and which stated that while Plaintiff's "employment will end effective immediately," he would be paid his "regular salary" through October 4, 2013. *Id.* ¶ 77.

As mentioned previously, Plaintiff asserts in his Complaint as against all Defendants claims for breach of contract, violations of the WPCL, fraudulent misrepresentation and negligent misrepresentation. On April 1, 2014, Defendants

separately filed two Motions to Dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  This matter is now ripe for disposition.

## II. DISCUSSION

### A. Motion to Dismiss Standard

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must view all allegations stated in the complaint as true and construe all inferences in the light most favorable to plaintiff.  *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984); *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  However,  "the tenet that a court must accept as true all of the [factual] allegations contained in the complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).   In ruling on such a motion, the court primarily considers the allegations of the pleading, but is not required to consider legal conclusions alleged in the complaint.  *Kost*, 1 F.3d at 183.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  At the motion to dismiss stage, the court considers whether plaintiff is entitled to offer evidence to support the allegations in the complaint.  *Maio v. Aetna, Inc.*, 221 F.3d

472, 482 (3d Cir. 2000).

A complaint should only be dismissed if, accepting as true all of the allegations in the amended complaint, plaintiff has not pled enough facts to state a claim to relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-664.

"In considering a Rule 12(b)(6) motion, we must be mindful that federal courts require notice pleading, as opposed to the heightened standard of fact pleading." *Hellmann v. Kercher*, No. 07-1373, 2008 WL 1969311 at * 3 (W.D. Pa. May 5, 2008) (Lancaster, J.). Federal Rule of Civil Procedure 8 "requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the…claim is and the grounds on which it rests,'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 554 (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, even under this lower notice pleading standard, a plaintiff must do more than recite the elements of a cause of action, and then make a blanket assertion of an entitlement to relief. *See Hellmann*, 2008 WL 1969311 at *3. Instead, a plaintiff must make a factual showing of his entitlement

9

to relief by alleging sufficient facts that, when taken as true, suggest the required elements of a particular legal theory. *See Twombly*, 550 U.S. at 561. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - - but it has not "shown" - - "that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (*quoting* Fed. R. Civ. P. 8(a)).

The failure-to-state-a-claim standard of Rule 12(b)(6) "streamlines litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).  A court may dismiss a claim under Rule 12(b)(6) where there is a "dispositive issue of law." *Id*. at 326.  If it is beyond a doubt that the non-moving party can prove no set of facts in support of its allegations, then a claim must be dismissed "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one." *Id.* at 327.

## B. Breach of Contract

Defendants Myers and McDonald first argue that Count I of Plaintiff's Complaint, which asserts a claim for breach of contract, should be dismissed as to them because they were not parties to the employment contract at issue in Plaintiff's breach of contract claim (ECF No. 11).

Pursuant to Pennsylvania general contract law, "an action on a contract cannot be maintained against a person who is not a party to the contract. . ." *Kinback Corp. v. Quaker Const. Mgmt., Inc.*, No. 3:00CV1941, 2001 WL 1231716, at *2 (M.D.Pa. Oct. 16, 2001) (Munley, J.) (citing *Commonwealth of PA v. Quandel*, 585 A.2d 1136, 1140 (1991)); *see also Electron Energy Corp. v. Short*, 597 A.2d 175, 177 (Pa.Super.Ct. 1991) (citing *Viso v. Werner*, 369 A.2d 1185 (Pa. 1977)) ("It is fundamental contract law that one cannot be liable for a breach of contract unless one is a party to that contract.").

Attached to Plaintiff's Complaint as Exhibit A is the employment contract at issue in Plaintiff's breach of contract claim. The employer is listed as "AccuWeather, Inc.," and the contract lists AccuWeather, Inc., as an entity, underneath the signature line, demonstrating further that the contract is between only Plaintiff and AccuWeather. Moreover, above the signature line the agreement states in all capital letters, "ACCUWEATHER AND EMPLOYEE HAVE EXECUTED THIS AGREEMENT. . ." Nowhere in the agreement are Messrs. Myers or McDonald identified as parties, nor are their names mentioned anywhere in the document.

Notably, Plaintiff agrees that a breach of contract action can only be

11

maintained against a party to the contract and, further, that Mr. Myers and Mr. McDonald were not parties to the contract.  Because Plaintiff cannot maintain an action for breach of contract against individuals not parties to the employment contract, Count I is dismissed with prejudice as against Defendants Myers and McDonald only.

## C. Pennsylvania Wage Payment and Collection Law

All Defendants next contend that Plaintiff's claim in Count II must be dismissed because the WPCL only allows for collection of wages already earned but yet unpaid, and Plaintiff is seeking only money which he might have become entitled to had he not been terminated, rather than wages already earned as of his termination.  Plaintiff responds that though AccuWeather paid him his "regular salary" through October 4, 2013, his employment agreement with AccuWeather provided for numerous sources of payment, including salary, bonuses, vacation days and stock options and that he was not paid these benefits that he was owed. Moreover, Plaintiff argues that dismissal of his claim at this stage in the proceedings is premature pending full discovery and disclosure of the scope of AccuWeather's obligations to pay and how much of those obligations AccuWeather met within the time period permitted following termination.

To the extent the Court determines that Plaintiff plausibly asserts a WPCL claim, Defendant McDonald further argues that the count must nevertheless be dismissed against him alone because Plaintiff has not pled that his activities rose to the level required to impose personal liability upon him under the WPCL.  Plaintiff counters that Defendant McDonald holds the title at AccuWeather as CHRO with the apparent authority to hire and fire the CFO, therefore making dismissal based on Defendant McDonald's level of activity and authority premature at this juncture.

Pennsylvania's WPCL provides a statutory remedy to employees whose former employers fail to timely pay them earned compensation. 43 P.S. § 260.5(a). It does not create a new right to compensation, but rather, "merely establishes a right to enforce payment of wages and compensation that the employer has legally obligated itself to pay"; as such, potential future, but as of yet unearned, compensation is not recoverable under the WPCL. *Scully v. US WATS*, 238 F.3d 497, 516-17 (3d Cir. 2001); *see also Weldon v. Kraft, Inc.*, 896 F.2d 793, 801 (3d Cir. 1990); *Harding v. Dusquene Light Co.*, 882 F.Supp. 422, 427-28 (W.D.Pa 1995).

The WPCL provides, in relevant part, "Whenever an employer separates an

employe[e] from the payroll . . . the wages or compensation earned shall become due and payable not later than the next regular payday of his employer on which such wages would otherwise be due and payable." 43 P.S. § 260.5(a).  The WPCL defines wages as "all earnings of an employe[e]," including "fringe benefits or wage supplements."  43 P.S. § 260.2a.  "Fringe benefits or wage supplements" is further defined as "vacation, holiday, or guaranteed pay . . . and any other amount to be paid pursuant to an agreement to the employe[e]." *Id.*

As such, vacation days are explicitly contemplated under the WPCL, provided that they have been earned at the time of termination.  *Id.*  Moreover, stock options and bonuses fall within the definition of fringe benefits or wage supplements as long as they represent an "amount to be paid pursuant to an agreement to the employee." *Id.*; *see Scully*, 238 F.3d at 517 ("[A] stock option may qualify as earned compensation under the WPCL if the employer specifically agreed to deliver the option as employment compensation."); *see also Bowers v. NETI Techs. Inc.*, 690 F.Supp. 349, 353 (E.D.Pa. 1988) (employer's agreement to repurchase stock from employee subject to the WPCL).

Defendants' argument that *Harding v. Dusquene Light Co.*, 882 F.Supp. 422 (W.D.Pa. 1995) prevents Plaintiff from asserting a violation of the WPCL is

14

unavailing.  *Harding* was decided on a motion for summary judgment, with the benefit of a full factual record before the court.  The issue in that case was whether Harding's employment agreement provided for the payment of unpaid vacation days and stock appreciation rights upon his termination.  There, the court ultimately determined that Harding was not entitled to payment for vacation days or stock appreciation rights, relying almost exclusively on the employer's written incentive plan and vacation policies and their relationship to Harding's employment agreement.

The case at bar is before the Court on a motion to dismiss, rather than one for summary judgment, and the issue is whether Plaintiff has adequately pled that the earned compensation and whether such compensation, including stock options and vacation days, is covered by the WPCL.  There is insufficient information before the Court to determine conclusively that the benefits argued by Plaintiff were not earned by the date of his termination.  Because *Harding* was decided on a motion for summary judgment and relied on extrinsic evidence of company policies which were very specific to that situation, it is not relevant to the issue before the Court today.  Analogously, the other case argued by Defendants, *Blackwell-Murray v. PNC Bank*, 963 F.Supp.2d 448 (E.D.Pa. 2013) was also

decided with the benefit of a full factual record on a motion for summary judgment, making its holding of similarly limited applicability to the current case.

It is the employment agreement between the parties that controls in determining whether earned wages are due. *See Weldon v. Kraft, Inc.*, 896 F.2d 793, 801 (3d Cir. 1990).  The ultimate issue in a claim under the WPCL is whether Plaintiff is "contractually entitled" to payment for vacation time and stock options. *See Harding*, 882 F.Supp. at 428.  Because stock options and vacation days are compensation within the definition of the WPCL, as discussed above, and the text of the employment agreement does not detail the exact date that these benefits were "earned", Plaintiff has adequately pled a claim for a violation of that act.  For example, it is entirely plausible from the pleadings and the accompanying employment agreement that the stock options were earned by his termination, as it references the effective date of the stock options as September 9, 2013, the day Plaintiff began working for AccuWeather.

However, it is not up to the Court at this juncture to determine whether the stock options and vacation days have actually been "earned" under the WPCL, such that Plaintiff is entitled to payment for those benefits.  A more complete factual record on this issue must be developed in order for the Court to determine

16

the intention of the parties regarding when each benefit would accrue to Plaintiff under the employment agreement.

Finally, Defendant McDonald's argument that Plaintiff has not pled a sufficient level of managerial activity on his part is unavailing.  It is clear that under Pennsylvania law, when a company fails to pay wages and benefits which are owed to employees, the top officers of the company can be held personally liable for that failure to pay. *See Carpenters Health & Welfare Fund v. Kenneth R. Ambrose, Inc.*, 727 F.2d 279, 282-83 (3d Cir. 1983).  "Given that the purpose of the WPCL is to deter managers from strategically diverting company resources away from the payment of wages and benefits, it makes sense for the WPCL to apply in only those contexts in which the managers have room to behave strategically." *Belcufine v. Aloe*, 112 F.3d 633, 642 (3d Cir. 1997).

Defendant McDonald is arguing that he does not have room to behave strategically in that he maintains no active participation in corporate policy-making decisions or advisement on pay or compensation and, further, that Plaintiff has not pled as such.  However, whether he maintains an active participation in corporate affairs is an issue of fact to be decided only after the parties have developed a complete factual record.  At this point, Plaintiff has adequately pled that Defendant

17

McDonald, the CHRO of AccuWeather, was involved in the decision to hire and to terminate and therefore had the capacity to "behave strategically" as contemplated by the United States Court of Appeals for the Third Circuit.  As such, Defendants' Motions to Dismiss Count II of Plaintiff's Complaint are denied.

## D. Fraudulent Misrepresentation

Defendants next allege that Count III of Plaintiff's Complaint for fraudulent misrepresentation must be dismissed pursuant to a variety of legal doctrines.  They first contend that Plaintiff's Complaint fails to meet the stringent pleading requirements of Federal Rule of Civil Procedure 9(b) in its allegation of fraudulent misrepresentation.  To that end, Defendants argue that Plaintiff's Complaint merely alludes to misrepresentations regarding their long-range business goals but does not specify what those representations were.  Furthermore, Defendants argue that the Complaint does not state with any particularity which fraudulent acts were committed by each Defendant but rather states generically that "Defendants" made each misrepresentation.  Plaintiff responds only that he has stated numerous specific false statements of material fact throughout his Complaint, and that he has adequately alleged the remaining elements of his claim of fraudulent misrepresentation.

Under Federal Rule of Civil Procedure 9(b), "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).  In order to satisfy Rule 9(b), plaintiffs must plead with particularity "the circumstances of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984).  Plaintiffs can satisfy this particularity requirement by pleading the date, place or time of the fraud, or through some other "means of injecting precision and some measure of substantiation into their allegations of fraud." *Id.* In doing so, plaintiffs must further allege who made each misrepresentation to whom and the general content of that representation. *See Kearney v. JPC Equestrian, Inc.*, No. 3:11-CV-01419, 2012 WL 1020276, at *5 (M.D.Pa. Jan. 4, 2012) (Carlson, M.J.) (citing *Lum v. Bank of Am.*, 361 F.3d 217, 223-24 (3d Cir. 2004).

Under Pennsylvania's common law, the elements of a claim of fraudulent misrepresentation are: (1) a misrepresentation; (2) which is material to the

transaction at hand; (3) made falsely; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance. *See Bouriez v. Carnegie Mellon Univ.*, 585 F.3d 765, 771 (3d Cir. 2009) (citing *Overall v. Univ. of Pa.*, 412 F.3d 492, 498 (3d Cir. 2005)).

In the case at bar, Plaintiff has failed to plead his fraudulent misrepresentation claim with the requisite particularity.  Although he has adequately pled the latter five elements of fraudulent misrepresentation, he has failed to plead which representations he is alleging are fraudulent and which defendant is the orator of each of those statements, as is required under Rule 9(b). At different points throughout his memorandum in opposition to Defendants' Motions to Dismiss, Plaintiff alludes to various misrepresentations which were made, but what misrepresentations exactly he is alleging in Count III is not clearly stated in his Complaint.  Further, Plaintiff asserts in his opposition brief that Defendants continued to make misrepresentations even after signing the employment contract, but in no instance does he clarify what those representations were and who made them.  As such, Plaintiff's fraudulent misrepresentation claim must be dismissed without prejudice, with leave to amend to satisfy the

particularity requirements of Rule 9(b) as interpreted today by this Court.

Because the Court is dismissing Count III of Plaintiff's Complaint on the grounds of lack of particularity under Federal Rule of Civil Procedure 9(b), the Court does not now reach Defendants' arguments for dismissal based on the gist of the action doctrine, the parol evidence rule, and the economic loss doctrine.

## E. Negligent Misrepresentation

Defendants argue that Count IV of Plaintiff's Complaint for negligent misrepresentation should be dismissed for the same reasons as the previous count: the gist of the action doctrine, the parol evidence rule, and the economic loss doctrine. Because the Court will dismiss the claim of negligent misrepresentation on the grounds of the economic loss doctrine, it will not consider the parties' arguments under the remaining legal doctrines.

Defendants contend that the economic loss doctrine applies to bar negligent misrepresentation claims where no physical injury or property damage is alleged and that Plaintiff's claim must be dismissed because the Complaint alleges only economic damage. In response to Defendants arguments on his negligent misrepresentation claim, Plaintiff contends that the injuries he suffered in reliance upon AccuWeather's misrepresentations resulted in damages beyond mere

economic loss, including loss of compensation, future raises, and bonuses at his CFO position at gen-E, as well as injuries sustained in disposing of his property and preparing to move his family across the country.

The economic loss doctrine precludes recovery for negligence if the plaintiff suffers a loss that is purely economic, unaccompanied by injury to either property or person. *See Excavation Tech., Inc. v. Columbia Gas Co. of Pa.*, 985 A.2d 840, 841 n.3. (2009).  The doctrine is concerned primarily with two main factors: foreseeability and limitation of liability. *See Azur v. Chase Bank, USA, Nat. Ass'n*, 601 F.3d 212, 222 (3d Cir. 2010).

The purpose of the economic loss doctrine is to "prevent claims based in tort that only allege economic losses in proceeding, in part because those losses can be compensated through contract remedies." *Ferki v. Wells Fargo Bank*, No. 10-2756, 2010 WL 5174406, at *9 (E.D.Pa. Dec. 20, 2010); *see also Howe v. LC Philly, LLC*, No. 10-5494, 2011 WL 1465446, at * 1 (E.D.Pa. Apr. 15, 2011) (applying the economic loss doctrine to the employment context).  In this case, Plaintiff alleges various injuries, including loss of compensation, future raises, and bonuses at his CFO position at gen-E, and injuries sustained in disposing of his property and preparing his family to move across the country.  These are all economic

harms; nowhere does Plaintiff assert damage to property or person as contemplated by the doctrine.  Moreover, the harm sought to be redressed is precisely that which a breach of contract action would redress, making the claim distinctly suited to contractual remedies, rather than remedies through tort.  Consequently, Plaintiff's contention that he has alleged more than economic harm rings hollow, and his claim of negligent misrepresentation falls directly within the ambit of the economic loss doctrine.

Finally, Pennsylvania has carved out a narrow exception to the economic loss doctrine for claims of negligent misrepresentation asserted pursuant to Section 552 of the Restatement (Second) of Torts. *See Excavation Techs.*, 985 A.2d at 842-44; *see also Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270 (2005).  Section 552 of the Restatement (Second) of Torts states that:

> One who, in the course of his business, profession or employment, or in any other transaction in which he was a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

RESTATEMENT (SECOND) OF TORTS § 552 (1977).  In doing this, the Court made an "exception to the doctrine to allow a commercial plaintiff recourse from an 'expert

supplier of information' with whom the plaintiff has no contractual relationship, when the plaintiff has relied on that person's 'special expertise' and the 'supplier negligently misrepresents the information to another in privity.'" *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 177 (3d Cir. 2008) (citing *Bilt-Rite*, 866 A.2d at 286).

In the case *sub judice*, Defendants are not "expert suppliers of information" who are in the business of supplying information, so the exception is inapplicable to maintain Plaintiff's negligent misrepresentation claim. As such, the economic loss doctrine bars Plaintiff from asserting a claim of negligent misrepresentation in which his only injuries are economic; therefore Count IV of his Complaint is dismissed with prejudice. In light of this determination, this Court refrains from deciding whether the gist of the action doctrine or the parol evidence rule would also work to bar this claim.

## III. CONCLUSION

Defendants' Motions to Dismiss are granted in part and denied in part. Count I for breach of contract is dismissed with prejudice as to Defendants Myers and McDonald. Count IV for negligent misrepresentation is dismissed with

prejudice as against all Defendants.  Count III for fraudulent misrepresentation is

dismissed without prejudice as against all Defendants with leave to amend in

accordance with this Court's decision.  Defendants' Motions to Dismiss are denied

with regards to Plaintiff's claim for violations of the WPCL in Count II.

BY THE COURT:

/s Matthew W. Brann
Matthew W. Brann
United States District Judge