IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN W. MORRISON, | : | Civil Action No. 4:14-cv-0209 |
| | : | |
| Plaintiff, | : | |
| | : | (Judge Brann) |
| v. | : | |
| | : | |
| ACCUWEATHER, INC; | : | |
| BARRY MYERS; | : | |
| and | : | |
| VINCENT MCDONALD | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM

July 14, 2015

Defendants AccuWeather, Inc. (hereinafter "AccuWeather"), Barry Myers, and Vincent McDonald, filed the instant motion to dismiss Count III of Plaintiff John W. Morrison's amended complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff's amended complaint was filed in response to this Court's disposition of Defendants' previous motion to dismiss, in which the Court dismissed Plaintiff's claim for fraudulent misrepresentation without prejudice for failure to plead in accordance with Rule 9(b) of the Federal Rules of Civil Procedure. Defendants now seek to dismiss this same count on the basis of the gist of the action doctrine, the economic loss doctrine, and the parol evidence rule.

1

The Court retains diversity jurisdiction pursuant to 28 U.S.C. § 1332.

Consequently, Pennsylvania substantive law applies.  *See, e.g., Erie R. Co. v.*

*Tompkins*, 304 U.S. 64, 91-92 (1938).  For the following reasons, Defendants'

motion to dismiss is denied.

## I. BACKGROUND

On February 6, 2014, Plaintiff John W. Morrison initiated the above-

captioned civil action by filing a Complaint with this Court alleging breach of

contract, violations of Pennsylvania's WPCL, fraudulent misrepresentation and

negligent misrepresentation.

This case arises from the employment relationship between Plaintiff John

Morrison and Defendant AccuWeather, Inc.  On or about May 27, 2013, Plaintiff

received an unsolicited telephone call from an executive recruiter, Rick Linde,

informing Plaintiff of a job opportunity with Defendant AccuWeather, Inc., in

State College, Pennsylvania.  Plaintiff was then employed as CFO of gen-E, a

market-leading information technology company located in California.   Plaintiff

consequently conducted an interview via Skype with Mr. Linde and subsequently

traveled to New York City to meet with him in person.

As a result of these two favorable interviews, Plaintiff took part in an

exhaustive interview process with Defendants, including Defendant Vincent

McDonald, the Chief Human Resources Officer (hereinafter "CHRO") and

Defendant Barry Myers, the Chief Executive Officer (hereinafter "CEO"), for the position of CFO of AccuWeather. This process included several telephone interviews, a few in-person interviews, and a four-hour-long psychological profile questionnaire, all of which spanned the course of several weeks. During one of the telephone interviews with Defendant Myers, Plaintiff pointedly inquired as to Mr. Myers' plans for the future of AccuWeather, specifically the financial prospects of the company and the long-range business plans for AccuWeather. Defendant Myers assured Plaintiff that Defendants' search was for a long-term CFO to replace the current incumbent CFO as an agent to drive change and reform AccuWeather's financial policies and procedures from within the company and to strengthen the company and its position in the competitive marketplace.

Throughout all of the interviews with Defendants McDonald and Myers, both in-person and electronic/telephonic, Plaintiff stated and reiterated that in order to uproot his family in a move to Pennsylvania and to forego his then-existing employment relationship in California, Plaintiff needed security in a promise of long-term employment. Defendants specifically assured Plaintiff that neither Defendants' leadership team nor Defendant AccuWeather's shareholders were considering sale, merger or other corporate transactions that could result in a material change of control of Defendant AccuWeather. Furthermore, Defendants repeatedly provided reassurance that their long-range business plans were

consistent with Plaintiff's repeated statements that he would only consider a long-term commitment to his engagement as CFO of Defendant AccuWeather.

On July 30, 2013, Defendants provided Plaintiff with an oral offer of employment for the CFO position at AccuWeather.  The oral offer provided for a minimum term of employment of two years, an annual salary of $235,000 and guaranteed bonuses of $115,000 for year one and $125,000 for year two.   In addition, the oral employment offer provided for 100,000 Class B stock options during the first year, to be provided on the first day of employment and 150,000 Class B stock options during the second year, to be provided on the first anniversary of the employment start date.  Moreover, the oral offer included an allowance for out-of-pocket and incidental costs of moving Plaintiff and his family to Pennsylvania and payment for up to four months of temporary housing.  Finally, the oral offer provided for payment to Plaintiff if his employment was terminated early due to a corporate change in control.

On July 31, 2013, Plaintiff accepted the offer of employment with the caveat that his base salary would be changed to $250,000.  On August 2, 2013, Plaintiff received a written agreement which Defendants represented reflected the terms of the oral employment offer.

In preparation for his move to Pennsylvania and in reliance on Defendants representations regarding their long-term plans for the company, Plaintiff disposed

of substantial and valuable electronic equipment as well as furniture and other property, and he undertook substantial repairs and improvements to his California residence to prepare it for sale or rental.

When Plaintiff began work on September 9, 2013, he discovered that contrary to the repeated representations of Defendants Myers and McDonald, the incumbent CFO was still in a position at AccuWeather in which he was described to Plaintiff as responsible for "special projects." Defendants stated that the former CFO would remain on-site and continue to be located in his executive suite offices, which were still identified as the offices of the CFO, while Plaintiff was assigned to "temporary" office space located in the human resources department. Furthermore, it was not until three days after the commencement of Plaintiff's employment that a memorandum was issued to all AccuWeather employees that formally introduced Plaintiff as the new CFO.

Moreover, Plaintiff came to learn within days of his arrival that he was being excluded from chief executive team meetings and emails.  To address this confusion, Plaintiff arranged with Defendants Myers and McDonald to personally meet with all of the chief executives and key divisional executives over the next two weeks to explain his role as CFO and his plans for the position, as well as to learn their plans for their respective areas of responsibility and discuss how they could all work together for the betterment of the company as a whole.  Plaintiff

5

communicated the results of these meetings to Defendant Myers, who stated that

he appreciated Plaintiff's efforts to address the executives' confusion and concerns

regarding Plaintiff's role within the company.

On September 22, 2013, thirteen days after starting the new CFO job at

AccuWeather, Defendant Myers called Plaintiff to notify him that he was

immediately terminated from his employment as CFO, despite Defendant Myers'

agreement that Plaintiff had the skills, knowledge, and expertise to do the job as it

was offered to Plaintiff.  Defendant Myers stated that he would not reconsider

immediate termination because he was concerned that an "executive," who

Defendant Myers would not identify, had expressed concern that Defendants

"brought in" Plaintiff because AccuWeather was "being sold."  On September 23,

2013, Plaintiff received a written memorandum from Defendant Myers

documenting Plaintiff's termination of employment, and which stated that while

Plaintiff's "employment will end effective immediately," he would be paid his

"regular salary" through October 4, 2013.

On April 1, 2014, Defendants filed separate motions to dismiss Plaintiff's

complaint and this Court disposed of those motions by dismissing Plaintiff's

negligent misrepresentation claim with prejudice on the basis of the economic loss

doctrine and his fraudulent misrepresentation claim without prejudice for failure to

plead in conformity with Federal Rule of Civil Procedure 9(b).  Plaintiff filed an

amended complaint on December 12, 2014, in which he reasserted his claim for fraudulent misrepresentation with more detailed allegations.  The instant motion followed, in which Defendants seek to dismiss that same claim on three bases: the gist of the action doctrine, the economic loss doctrine, and the parol evidence rule. The matter has been fully briefed and is now ripe for disposition.

## II. LEGAL STANDARD

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must view all allegations stated in the complaint as true and construe all inferences in the light most favorable to plaintiff.  *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984); *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  However, "the tenet that a court must accept as true all of the [factual] allegations contained in the complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).   In ruling on such a motion, the court primarily considers the allegations of the pleading, but is not required to consider legal conclusions alleged in the complaint.  *Kost*, 1 F.3d at 183.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  At the motion to dismiss stage, the court considers whether plaintiff is entitled to offer evidence to support the allegations in the complaint.  *Maio v. Aetna, Inc*., 221 F.3d 472, 482 (3d Cir. 2000).

A complaint should only be dismissed if, accepting as true all of the allegations in the amended complaint, plaintiff has not pled enough facts to state a claim to relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-664.

"In considering a Rule 12(b)(6) motion, we must be mindful that federal courts require notice pleading, as opposed to the heightened standard of fact pleading." *Hellmann v. Kercher*, No. 07-1373, 2008 WL 1969311 at * 3 (W.D. Pa. May 5, 2008) (Lancaster, J.). Federal Rule of Civil Procedure 8 "requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the…claim is and the grounds on which it rests,'" *Twombly*, 550 U.S. at 554 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, even under this lower notice pleading standard, a plaintiff must do more than recite the elements of a cause of action, and then make a blanket assertion of an entitlement to relief. *See Hellmann*, 2008 WL 1969311 at *3. Instead, a plaintiff must make a factual showing of his entitlement to relief by alleging sufficient facts that, when taken as true, suggest the required elements of a particular legal theory. *See Twombly*, 550 U.S. at 561. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,

8

the complaint has alleged - - but it has not "shown" - - "that the pleader is entitled

to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)).

The failure-to-state-a-claim standard of Rule 12(b)(6) "streamlines litigation

by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490

U.S. 319, 326-27 (1989). A court may dismiss a claim under Rule 12(b)(6) where

there is a "dispositive issue of law." *Id*. at 326. If it is beyond a doubt that the

non-moving party can prove no set of facts in support of its allegations, then a

claim must be dismissed "without regard to whether it is based on an outlandish

legal theory or on a close but ultimately unavailing one." *Id*. at 327.

## III. DISCUSSION

### A. Gist of the Action Doctrine

First, Defendants argue that Plaintiff's fraudulent misrepresentation claim is

barred by the gist of the action doctrine because the gist of his claim sounds in

contract rather than in tort. Specifically, they contend that the gist of Plaintiff's

claim is that Defendants agreed to provide him with two years' employment and

then failed to perform, an allegation which is intertwined with his contract claims.

Plaintiff responds that there is a blanket exception to the gist of the action doctrine

for claims of fraud in the inducement.

To a certain extent, Plaintiff is correct in his assertion because courts have

drawn a distinction between fraud in the performance claims, which are barred by

the gist of the action doctrine in contract cases, and fraud in the inducement claims,

which are not necessarily barred.  *See, e.g., Foster v. Nw. Mut. Life*, 02-CV-2211,

2002 WL 31991114, at *2–3 (E.D. Pa. July 26, 2002) (suggesting that fraud in the

inducement is not necessarily barred by the doctrine because it is sometimes

collateral to the terms of the contract itself); *Sullivan v. Chartwell Inv. Partners,*

*L.P.*, 873 A.2d 710, 719 (Pa. Super. Ct. 2005) (finding that a fraud in the

inducement claim was collateral to contract performance such that the gist of the

action did not bar it); *eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10,17

(Pa. Super. 2002) ("[F]raud in the inducement of a contract would not necessarily

be covered by the doctrine because fraud to induce a person to enter into a contract

is generally collateral to (*i.e.*, not 'interwoven' with) the terms of the contract

itself.").  However, Plaintiff is incorrect in his contention that there is a blanket

exception for fraudulent inducement claims.  Rather, the gist of the action doctrine

will still act to bar claims of fraudulent inducement "where a defendant's alleged

failure to perform its duty under the contract is inexplicably transformed into a

claim that this failure amounts to fraud."  *Air Products and Chemicals, Inc. v.*

*Eaton Metal Products Co.*, 256 F.Supp.2d 329, 342 (E.D.Pa. 2003).

The question then becomes at which point the gist of the action doctrine

precludes a claim of fraud in the inducement.  "The distinction between fraud in

the performance claims and fraud in the inducement claims for application of the

gist of the action doctrine 'becomes somewhat problematic . . . where the alleged

misrepresentations that induce a contract also constitute promises that form the

contract's terms.'"  *Victor Buyck Steel Const.*, 2010 WL 1223594, at *2 (quoting

*A&L Precision Prods. v. Alloy Bellows & Precision Welding, Inc.*, CIV.A.07-0345,

2009 WL 2959608 (W.D. Pa. Sept. 14, 2009)).  The United States Court of

Appeals for the Third Circuit believes the doctrine "call[s] for a fact-intensive

judgment as to the true nature of a claim."  *Williams v. Hilton Grp. PLC*, 93 Fed.

Appx. 384, 385 (3d Cir. 2004); *see also Pediatrix Screening, Inc. v. Telechem Int'l,

Inc.*, 602 F.3d 541, 550 (3d Cir. 2010); *Integrated Waste Solutions, Inc. v.

Goverdhanam*, No. 10-2155, 2010 WL 4910176 (E.D. Pa. Nov. 30, 2010).

        For example, in *Victor Buyck Steel Constr. v. Keystone Cement Co.*,

CIV.A.09-2941, 2010 WL 1223594, at *2–3 (E.D. Pa. Mar. 30, 2010), the court

denied a motion to dismiss the plaintiff's fraud in the inducement claim because

the court needed more facts to determine the "gist" of the action.

        In comparison, in *Penn City Invs., Inc. v. Soltech, Inc.*, CIV.A. 01-5542,

2003 WL 22844210, at *3 (E.D. Pa. Nov. 25, 2003), the court held the doctrine

barred a fraudulent inducement claim based on pre-contract statements because the

statements concerned specific duties that the parties later outlined in the contract.

Similarly, in *Williams v. Hilton Group PLC*, 93 Fed. Appx. 384, 386 (3d Cir.

2004), the Third Circuit held that the doctrine barred the plaintiff's fraud in the

11

inducement claims because the "gist of [the] claims sound[ed] in contract, not

tort." This was so even when the defendant "induced [the plaintiff] into signing

the Letter of Intent and dealing with [the defendant] by lying about its intent to

honor the agreement." *Williams*, 93 Fed. Appx. at 386 (internal quotations

omitted).

In *Vives v. Rodriguez*, 849 F. Supp. 2d 507, 521–22 (E.D. Pa. 2012), Judge

Stewart R. Dalzell crafted a cogent piece of legal reasoning from a close reading of

the *eToll* decision that this Court finds to be both applicable and persuasive.[1]

Judge Dalzell compared the elements for a breach of contract[2] with the elements of

fraud and negligent misrepresentation, writing:

> [i]f a plaintiff can demonstrate that the defendant *knew*,
> at the time a contract was entered, that he did not intend
> to perform under that contract—thus satisfying [an]
> element of a fraudulent misrepresentation claim—then
> success in proving the elements of a claim for breach
> would necessarily produce success in prosecuting a fraud
> claim. Similarly, an inability to prove a contract claim—
> whether because no agreement was concluded, no breach

---

[1] Other Federal District Courts in Pennsylvania have been similarly persuaded by this line of reasoning. *See, e.g., Oldcastle Precast, Inc. v. VPMC, Ltd.*, CIV.A. 12-6270, 2013 WL 1952090 (E.D. Pa. May 13, 2013) *reconsideration denied*, CIV.A. 12-6270, 2013 WL 3865112 (E.D. Pa. July 26, 2013) (dismissing a fraud claim barred by the doctrine); *Bengal Converting Servs., Inc. v. Dual Printing, Inc.*, CIV.A. 11-6375, 2012 WL 831965 (E.D. Pa. Mar. 13, 2012) (finding the gist of the action doctrine barred a fraud in the inducement claim when the claim involved a promise to perform on the contract).

[2] In Pennsylvania, a plaintiff states a claim for breach of contract by proving: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *Vives*, 849 F. Supp. 2d at 521 (quoting *Omicron Systems, Inc v. Weiner*, 860 A.2d 554, 564 (Pa. Super. Ct. 2004)) (internal quotations omitted).

12

> occurred, or no injury resulted—would doom any fraud
> claim based on misrepresentation of the intent to
> perform.  Once a plaintiff proved that a defendant
> intended not to perform under a contract, any fraud
> claims would precisely duplicate any contract claims.
> Given this congruency between fraudulent inducement
> claims predicated on the intent to perform under a
> contract and claims for breach of that contract, *eToll*
> suggests that the former claims are barred by the gist of
> the action doctrine.

*Vives*, 849 F. Supp. 2d at 521; *see also Agrotors, Inc. v. Ace Global Markets*, Civil

Action No. 1:13-cv-1604,  2014 WL 690623, at * 4 (M.D.Pa. Feb. 24, 2014)

(Conner, C.J.) (holding that the doctrine bars fraudulent inducement claims based

upon "misrepresentations as to a party's intent to perform under a contract.").

Defendants base their argument on only one of Plaintiff's allegations; that is

the promise of two years of employment, which is directly addressed by the written

contract.  However, this position significantly underrepresents the nature and

number of misrepresentations alleged by Plaintiff to be fraudulent.  Rather,

Plaintiff also alleges that Defendants misrepresented their long-range business

goals for a new CFO, the fact that the current CFO would be leaving, and the

stability of the AccuWeather leadership team.  These are claims that the

Defendants induced Plaintiff to enter into a contract based on false premises; the

fraud alleged here does not concern the performance of contractual duties and it is

not simply a restatement of a breach of contract claim. Accordingly, the gist of the

action doctrine does not act to bar Plaintiff's fraudulent misrepresentation claim on these allegations.

However, Plaintiff also alleges that Defendants fraudulently misrepresented the duration of Plaintiff's appointment to the AccuWeather leadership team as the CFO.  Though Defendants argue that this is a term which is covered by the contract and thus the gist of this allegation sounds in contract rather than fraud, this Court again disagrees.  Plaintiff is alleging here that he was told by the Defendants that they had long-term business goals and were looking to fill a long-term position, but that in actuality that was not the case.  This is a representation separate from Defendants contractual promise to employ him for two years and terminate him only for cause.  Instead, this is a representation not just regarding the plans that Defendants had for Plaintiff specifically, but regarding the plans that they had for the position generally and their need to employ someone who would be willing to devote his career to the company.  Consequently, the gist of the action of Count III sounds in fraud, rather than any contractual relationship between the parties.  The doctrine does not bar Plaintiff's claim.

## B. Economic Loss Doctrine

Next, Defendants argue that Plaintiff's claim for fraudulent misrepresentation should be barred by the economic loss doctrine because Plaintiff has alleged only economic losses, rather than injury to either property or person.

14

Similar to his previous argument, Plaintiff contends that there exists an exception to the economic loss doctrine for claims of fraudulent inducement and therefore his claim falls outside the ambit of the doctrine.

The economic loss doctrine precludes recovery for negligence if the plaintiff suffers a loss that is purely economic, unaccompanied by injury to either property or person. *See Excavation Tech., Inc. v. Columbia Gas Co. of Pa*., 985 A.2d 840, 841 n.3 (2009).  The doctrine is concerned primarily with two main factors: foreseeability and limitation of liability. *See Azur v. Chase Bank, USA, Nat. Ass'n*, 601 F.3d 212, 222 (3d Cir. 2010).

The purpose of the economic loss doctrine is to "prevent claims based in tort that only allege economic losses in proceeding, in part because those losses can be compensated through contract remedies." *Ferki v. Wells Fargo Bank*, No. 10-2756, 2010 WL 5174406, at *9 (E.D.Pa. Dec. 20, 2010); *see also Howe v. LC Philly*, LLC, No. 10-5494, 2011 WL 1465446, at * 1 (E.D.Pa. Apr. 15, 2011) (applying the economic loss doctrine to the employment context); *Duquesne Light Co v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir. 1995) (holding that the economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract.").

While it is well-settled under Pennsylvania law that the economic loss doctrine bars negligence claims, the Pennsylvania Supreme Court has yet to

15

address the issue of whether the doctrine applies similarly to claims of intentional

fraud.  However, the Third Circuit has predicted that the Pennsylvania Supreme

Court would likely apply the doctrine to such claims. *See Werwinski v. Ford Motor*

*Co.*, 286 F.3d 661, 675 (3d Cir. 2002).  In that case, the Third Circuit stated that it

was "particularly influenced by an emerging trend . . . recognizing a limited

exception to the economic loss doctrine for fraud claims, but only where the claims

at issue arise independently of the underlying contract."  *Id.* at 676 (citing *Huron*

*Tool & Engineering Co. v. Precision Consulting Services, Inc.*, 532 N.W.2d 541,

545 (Mich.App. 1995) (crafting an exception for fraud in the inducement claims

where the fraud is "extraneous to the contract," rather than "interwoven with the

breach of contract.")).

As already addressed in the previous section, Plaintiff alleges fraud in the

inducement and the allegations that he relays are undoubtedly distinct from, rather

than interwoven with, his breach of contract claim.  The fraudulent

misrepresentations, as alleged, clearly arise independently of the underlying

contract.  Accordingly, the economic loss doctrine will not bar Plaintiff's claim of

fraudulent misrepresentation.

## C. Parol Evidence Rule

Finally, Defendants argue that Count III should be barred by the parol

evidence rule because Plaintiff is essentially attempting to modify the terms of a

fully integrated written agreement with promises that he alleges were made prior to
the date the parties entered into the written agreement.  Plaintiff counters primarily
that the agreement was not integrated because, despite an explicit integration
clause, Defendant McDonald specifically represented the contract to him as a
summary of the key points of their agreement, demonstrating that the parties did
not intend that the agreement be fully integrated.

The Pennsylvania parol evidence rule "renders evidence of prior or
contemporaneous agreements, whether written or oral, inadmissible to the extent
they are inconsistent with the parties' written, final agreement." *Coram Healthcare
Corp. v. Aetna U.S. Healthcare, Inc.*, 94 F.Supp.2d 589, 592 (E.D.Pa. 1999).  The
Pennsylvania Supreme Court has explained the rule as follows:

> Where the parties, without any fraud or mistake, have deliberately put their
> engagements in writing, the law declares the writing to be not only the best,
> but the only, evidence of their agreement.  All preliminary negotiations,
> conversation and verbal agreements are merged in and superseded by the
> subsequent written contract . . . and unless fraud, accident or mistake be
> averred, the writing constitutes the agreements between the parties, and its
> terms and agreements cannot be added to nor subtracted from by parol
> evidence.

*Gianni v. Russell & Co.*, 126 A.2d 791, 792 (Pa. 1924); *see also Yocca v.
Pittsburgh Steelers Sports, Inc.*, 824 A.2d 425, 436 (Pa. 2004) (affirming the
continued viability of the rule stated in *Gianni*); *see also Lenzi v. Hahnemann
University*, 664 A.2d 1375, 1379 (Pa.Super. 1995) ("If a written contract is
unambiguous and held to express the embodiment of all negotiations and

agreements prior to its execution, neither oral testimony nor prior written

agreements or other writings are admissible to explain or vary the terms of that

contract.") (citing *McGuire v. Schneider, Inc.*, 534 A.2d 115 (Pa.Super 1987)).

　　For this rule to apply, the contract must be the entire agreement between the

parties; that is, the contract must be fully integrated.  *See id.* The issue of whether a

contract is integrated is a question of law for the Court to decide. *See Lenzi*, 664

A.2d at 1379.  "A contract is integrated if it represents a final and complete

expression of the parties' agreement." *Id.*; *see also Yocca*, 854 A.2d at 436 ("To

determine whether or not a writing is the parties' entire contract, the writing must

be looked at and if it appears to be a contract complete within itself, couched in

such terms as import a complete legal obligation without any uncertainty as to the

object or extent of the parties' engagement, it is conclusively presumed that the

writing represents the whole engagement of the parties.").

　　Importantly, "the parol evidence rule is no bar to oral testimony designed to

show that the writing is not an integrated writing."  *Rempel v. Nationwide Life Ins.*

*Co., Inc.*, 370 A.2d 366, 372 (Pa. 1977).  Consequently, in determining whether the

instant agreement is fully integrated, this Court may look to evidence extrinsic to

the written contract itself in order to determine whether the parties intended the

writing to be a complete expression of their agreement. *See In re Green Goblin,*

*Inc*, 470 B.R. 739, (E.D.Pa. 2012) ("[A] court may look to the prior negotiations or

agreements of the parties, whether oral or written, that were made regarding the

contract."); *Lenzi*, 664 A.2d at 1379 ("The parol evidence rule does not preclude

the admission of evidence to establish whether the parties *intended* the writing to

be a complete embodiment of their agreement."); *see also Murray v. University of*

*Pennsylvania Hospital*, 490 A.2d 839, 844 (1985) ("Parol evidence may always be

considered by the court to determine whether the parties intended the writing to be

a complete embodiment of their agreement.").  In determining whether the contract

is integrated, courts have considered several factors including whether the contract

contains a merger or integration clause, the length and detail of the contract, the

formality of the setting, and whether the contract is a form.  *See Green Goblin*, 470

B.R. at 751.

    In the case at bar, there is a written contract which was sent to the Plaintiff

via email by Defendant McDonald.  Notably, that contract does contain an

integration clause  stated in all capital letters, which is ordinarily strong evidence

that the contract was intended to be fully integrated.  However, Defendant

McDonald's email, through which the written contract was presented to Plaintiff,

states, "This letter, and the employment agreement with attachment *are intended to*

*summarize key components of AccuWeather's offer of employment and your*

*obligations as an employee*." (emphasis added).  This email, given to Plaintiff

simultaneously with the written document, describes the contract as only

summarizing key points of the parties' agreement, necessitating that there were additional aspects of the agreement not addressed by the written document. Consequently, it appears to this Court that the parties did not intend for the written document to "represent a final and complete expression" of their agreement.  The inclusion of an integration clause cannot defeat such clear evidence that the parties intended the contract to be merely a summary of their agreement.  Accordingly, Plaintiff's claim for fraudulent misrepresentation is not barred by the parol evidence rule.

## IV. CONCLUSION

In accordance with the foregoing reasoning, Defendants' motion to dismiss Count III of Plaintiff's amended complaint is denied.

BY THE COURT:


/s Matthew W. Brann
Matthew W. Brann
United States District Judge