IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN W. MORRISON, | : | Civil Action No. 4:14-cv-0209 |
| | : | |
| Plaintiff, | : | |
| | : | (Judge Brann) |
| v. | : | |
| | : | |
| ACCUWEATHER, INC; | : | |
| BARRY MYERS; | : | |
| and | : | |
| VINCENT MCDONALD | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

December 23, 2015

Pending before the Court are two motions for leave to file amended answers, one filed by Defendant AccuWeather, Inc. (hereinafter "AccuWeather") and one filed by Barry Myers (hereinafter "Mr. Myers") and Vincent McDonald (hereinafter "Mr. McDonald").[1] Both motions have been fully briefed by the parties and are ripe for disposition. For the following reasoning, both motions are granted.

**I. BACKGROUND**

This case arises from the employment relationship between Plaintiff John W. Morrison (hereinafter "Mr. Morrison") and AccuWeather. On or about May 27, 2013, Mr. Morrison received an unsolicited telephone call from an executive

---

[1] ECF Nos. 43, 44.

recruiter, Rick Linde, informing Mr. Morrison of a job opportunity with AccuWeather in State College, Pennsylvania. Mr. Morrison was then employed as Chief Financial Officer (CFO) of gen-E, a market-leading information technology company located in California.

As a result of two favorable interviews, Mr. Morrison took part in an exhaustive interview process with Mr. McDonald, the Chief Human Resources Officer and Mr. Myers, the Chief Executive Officer, for the position of CFO of AccuWeather. During the interview process, Defendants assured Mr. Morrison that their search was for a long-term CFO to replace the current incumbent CFO; Mr. Morrison, in turn, expressed that he needed security in a promise of long-term employment in order to uproot his family in a move to Pennsylvania and to forego his then-existing employment relationship in California.

On July 30, 2013, Defendants provided Mr. Morrison with an oral offer of employment for the CFO position at AccuWeather. The oral offer provided for a minimum term of employment of two years, an annual salary of $235,000 and guaranteed bonuses of $115,000 for year one and $125,000 for year two. In addition, the oral employment offer provided for 100,000 Class B stock options during the first year, to be provided on the first day of employment and 150,000 Class B stock options during the second year, to be provided on the first anniversary of the employment start date. The oral offer also included an

allowance for out-of-pocket and incidental costs of moving Mr. Morrison and his family to Pennsylvania and payment for up to four months of temporary housing. Finally, the oral offer provided for payment to Mr. Morrison if his employment was terminated early due to a corporate change in control.

On July 31, 2013, Mr. Morrison accepted the offer of employment with the caveat that his base salary would be changed to $250,000.  On August 2, 2013, he received a written agreement which Defendants represented reflected the terms of the oral employment offer, together with modification to the base salary.

In preparation for his move to Pennsylvania and in reliance on Defendants representations regarding their long-term plans for the company, Mr. Morrison disposed of substantial and valuable electronic equipment as well as furniture and other property, and he undertook substantial repairs and improvements to his California residence to prepare it for sale or rental.

When Mr. Morrison began work on September 9, 2013, he discovered that contrary to the repeated representations of Defendants Myers and McDonald, the incumbent CFO was still in a position at AccuWeather in which he was described to Mr. Morrison as responsible for "special projects." Defendants stated that the former CFO would remain on-site and continue to be located in his executive suite offices, which were still identified as the offices of the CFO, while Mr. Morrison

was assigned to "temporary" office space located in the human resources department.

On September 22, 2013, thirteen days after starting the new CFO job at AccuWeather, Mr. Myers called Mr. Morrison to notify him that he was immediately terminated from his employment as CFO, despite Mr. Myers' agreement that Mr. Morrison had the skills, knowledge, and expertise to do the job as it was offered to him. Mr. Myers stated that he would not reconsider immediate termination because he was concerned that an "executive," who Mr. Myers would not identify, had expressed concern that Defendants "brought in" Mr. Morrison because AccuWeather was "being sold." On September 23, 2013, Mr. Morrison received a written memorandum from Mr. Myers documenting Mr. Morrison's termination of employment which stated that while Mr. Morrison's "employment will end effective immediately," he would be paid his "regular salary" through October 4, 2013.

Mr. Morrison subsequently initiated the above-captioned civil action by filing a complaint with this Court alleging breach of contract, violations of the Pennsylvania Wage Payment and Collection Act, and fraudulent misrepresentation.[2]

---

[2] ECF No. 20.

## II. DISCUSSION

Defendants argue that new information has come to light through the discovery process which provides a basis for a new affirmative defense, fraud in the inducement, "based upon the fraudulent concealment of Plaintiff's employment status and the financial problems of his employer at the time of the recruitment process."[3] AccuWeather also seeks to file a new compulsory counterclaim against Mr. Morrison based upon fraudulent concealment.[4] Accordingly, Defendants filed motions for leave to amend their answers[5] under Rule 15 of the Federal Rules of Civil Procedure.[6]

Rule 15 provides that a pleading may be amended by leave of court and that "the court should freely give leave when justice so requires."[7] The United States Supreme Court explained:

> "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'"[8]

The liberal right to amend extends to an answer to the complaint.[9]

---

[3] ECF No. 50 at 2; see also ECF No. 49 at 2.
[4] ECF No. 49 at 2.
[5] ECF Nos. 35, 36.
[6] ECF Nos. 43, 44.
[7] Fed. R. Civ. P. 15(a)(2).
[8] *Foman v. Davis*, 371 U.S. 178, 182 (1962).
[9] *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004)(*citing Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing of Virgin Islands, Inc.,* 663 F.2d 419, 425 (3d Cir. 1981).

Mr. Morrison, in his briefs in opposition to both motions, submits that the standard under Rule 15 should not be applied to the instant matter.[10] Instead, he argues, this Court should apply the standard under Rule 16(b). Rule 16(b)(b) provides that a pretrial conference schedule "may be modified only for good cause" after it has been issued by a court.[11]

Mr. Morrison contends that this higher standard should apply as this Court has already issued a pretrial conference schedule.[12] He further argues that Defendants have failed to show good cause because the "material facts underlying [D]efendants' proposed amendments in this case were known to the [D]efendants as soon as they received the original complaint," which is to say that his employment at gen-E was known to Defendants at the time of his hire or, at the very least, at the time Mr. Morrison filed both the original complaint and the amended complaint.[13]

In support of his argument that the proper standard of review is under Rule 16, Mr. Morrison cites *Dimensional Communications, Inc. v. Oz Optics Ltd.*,[14] and *Eastern Minerals & Chemicals Co. v. Mahan*.[15] These cases, however, are readily distinguished from the case at hand. First, defendants in both *Dimensional Communications* and *Eastern Minerals* sought leave to amend their answers

---

[10] ECF Nos. 50, 51.
[11] Fed. R. Civ. P. 16(b)(4).
[12] *See* ECF No. 42.
[13] ECF No. 52 at 5; see also ECF Nos. 1, 20.
[14] 148 Fed. Appx. 82, 85 (3rd Cir. 2005).
[15] 225 F.3d 330, 340 (3rd Cir. 2000).

months after the court had set case management deadlines and after the deadline to file amendments had lapsed.[16] Second, and more importantly, the defendants in both cases were in possession of the facts underlying the proposed amendments well before the amendment deadlines.[17]

In the instant matter, a pretrial conference schedule has been set but it does not include a deadline for filing amendments.[18] Furthermore, while Defendants may well have been aware from the complaint and the amended complaint that Mr. Morrison had been employed by gen-E at the time he accepted employment with AccuWeather, Mr. Morrison plead no facts to indicate gen-E's financial status at the time he left the company. Therefore, this recently discovered information may well be considered "new" to Defendants.[19]

## III. CONCLUSION

In accordance with the foregoing analysis, Defendants' motions for leave to amend their answers[20] are granted.

An appropriate Order follows.

---

[16] *See Eastern Minerals*, 225 F.3d at 340; *see also Dimensional Communications*, 148 Fed. Appx. 82 at 85.

[17] *See generally Eastern Minerals*, 225 F.3d at 340 (defendants did not explain why they had not sought leave to amend earlier and made no argument that new information had come to light); *Dimensional Communications*, 148 Fed. Appx. 82 at 85.

[18] ECF No. 42.

[19] It is important to note, however, that because Defendants contend that they only became aware of gen-E's financial circumstances through the discovery process and were accordingly unaware of the information at the time Mr. Morrison's employment was terminated, this information, if true, will likely have more weight in the Court's determination of damages, if any, than in finding that the information had any bearing on Defendants' decision to terminate Mr. Morrison.

[20] ECF Nos. 43, 44.

BY THE COURT:



s/ Matthew W. Brann
Matthew W. Brann
United States District Judge