IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN W. MORRISON, | : | Civil Action No. 4:14-cv-0209 |
| | : | |
| Plaintiff, | : | |
| | : | (Judge Brann) |
| v. | : | |
| | : | |
| ACCUWEATHER, INC; | : | |
| BARRY MYERS; | : | |
| and | : | |
| VINCENT MCDONALD | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

May 26, 2016

Pending before the Court is a motion to dismiss filed by Plaintiff John Morrison against Defendants AccuWeather, Inc. (hereinafter "AccuWeather"), Barry Myers (hereinafter "Mr. Myers"), and Vincent McDonald (hereinafter "Mr. McDonald") (collectively "Defendants").[1] The motion seeks to dismiss Count One of Defendant AccuWeather's counterclaim which alleges fraudulent concealment.[2] The motion has been fully briefed by the parties and is now ripe for disposition.[3] For the following reasoning, Mr. Morrison's motion to dismiss is granted.

---

[1] ECF Nos. 63.
[2] ECF No. 60.
[3] Mr. Morrison points out in his reply brief that Defendants' brief in opposition was filed untimely, two days after the brief was due under Local Rule 7.6. This Court, however, will consider Defendants' opposition, especially since it is granting Mr. Morrison's motion.

## I. BACKGROUND

The background facts are thoroughly stated in this Court's past Memoranda addressing two previous motions to dismiss.[4] For the purposes of this third motion to dismiss, the salient facts are briefly stated. This matter arises from an aborted employment relationship between Mr. Morrison and Defendant AccuWeather, Inc. On or about May 27, 2013, Mr. Morrison received an unsolicited telephone call from an executive recruiter, Rick Linde, informing Mr. Morrison of a job opportunity with AccuWeather in State College, Pennsylvania.  Mr. Morrison was then apparently employed as Chief Financial Officer (CFO) of gen-E, a market-leading information technology company located in California.

As a result of two favorable interviews, an exhaustive interview process, and salary negotiations, Defendants provided Mr. Morrison with an offer of employment for the CFO position at AccuWeather. The offer provided for a minimum term of employment of two years, an annual salary of $250,000 and guaranteed bonuses of $115,000 for year one and $125,000 for year two, together with 100,000 Class B stock options during the first year, to be provided on the first day of employment and 150,000 Class B stock options during the second year, to be provided on the first anniversary of the employment start date.  The offer also included an allowance for out-of-pocket and incidental costs of moving Mr.

---

[4] See ECF Nos. 16, 33.

Morrison and his family from California to Pennsylvania and payment for up to four months of temporary housing.  Finally, the offer provided for payment to Mr. Morrison if his employment was terminated early due to a corporate change in control. Mr. Morrison accepted the AccuWeather offer and received a written agreement commemorating the terms on August 2, 2013.

In preparation for his move to Pennsylvania and in reliance on Defendants representations regarding their long-term plans for the company, Mr. Morrison disposed of substantial and valuable electronic equipment as well as furniture and other property, and he undertook substantial repairs and improvements to his California residence to prepare it for sale or rental.

Mr. Morrison began work at AccuWeather on September 9, 2013. On September 22, 2013, thirteen days after starting his new position at AccuWeather, Mr. Myers called Mr. Morrison to notify him that he was immediately terminated from his employment as CFO, despite Mr. Myers' agreement that Mr. Morrison had the skills, knowledge, and expertise to do the job as it was offered to him.  Mr. Myers stated that he would not reconsider immediate termination because he was concerned that an "executive," who Mr. Myers would not identify, had expressed concern that Defendants "brought in" Mr. Morrison because AccuWeather was "being sold."  On September 23, 2013, Mr. Morrison received a written memorandum from Mr. Myers documenting Mr. Morrison's termination of

employment which stated that while Mr. Morrison's "employment will end effective immediately," he would be paid his "regular salary" through October 4, 2013.

Mr. Morrison subsequently initiated the above-captioned civil action by filing a complaint with this Court alleging breach of contract, violations of the Pennsylvania Wage Payment and Collection Act, and fraudulent misrepresentation.[5] On April 1, 2014, Defendants filed separate motions to dismiss Mr. Morrison's complaint and this Court disposed of those motions by dismissing the negligent misrepresentation claim with prejudice on the basis of the economic loss doctrine and the fraudulent misrepresentation claim without prejudice for failure to plead in conformity with Federal Rule of Civil Procedure 9(b).[6] Mr. Morrison filed an amended complaint on December 12, 2014, in which he reasserted his claim for fraudulent misrepresentation with more detailed allegations.[7] On December 26, 2014, Defendants filed a second motion to dismiss seeking to dismiss Mr. Morrison's reasserted fraudulent misrepresentation claim. Defendants' motion was denied.[8]

Defendants thereafter filed their answer on July 27, 2015 but, subsequently, filed a motion for leave to file an amended answer to add the counterclaim of

[5] ECF No. 1.
[6] ECF Nos. 7, 8, 17.
[7] ECF No. 20.
[8] ECF Nos. 21, 34.

4

fraudulent misrepresentation, which this Court granted.[9] Mr. Morrison then filed the instant motion seeking to dismiss Defendants' fraudulent misrepresentation claim.[10]

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may file a motion to dismiss for "failure to state a claim upon which relief can be granted." Such a motion "tests the legal sufficiency of a pleading" and "streamlines litigation by dispensing with needless discovery and factfinding."[11] "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."[12] This is true of any claim, "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."[13]

Beginning in 2007, the Supreme Court of the United States initiated what some scholars have termed the Roberts Court's "civil procedure revival" by significantly tightening the standard that district courts must apply to 12(b)(6) motions.[14] In two landmark decisions, *Bell Atlantic Corporation v. Twombly* and *Ashcroft v. Iqbal*, the Roberts Court "changed . . . the pleading landscape" by "signal[ing] to lower-court judges that the stricter approach some had been taking

---

[9] ECF Nos. 35, 35, 43, 44, 57, 60, 61.

[10] ECF No. 63.

[11] *In re Hydrogen Peroxide Litigation*, 552 F.3d 305, 316 n.15 (3d Cir. 2008) (Scirica, C.J.) (quoting *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 675 (7th Cir. 2001) (Easterbrook, J.)). *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989).

[12] *Neitzke*, 490 U.S. at 326 (citing *Hishon v. King & Spalding*, 467 U. S. 69, 73 (1984)).

[13] *Neitzke*, 490 U.S. at 327.

[14] Howard M. Wasserman, *The Roberts Court and the Civil Procedure Revival*, 31 Rev. Litig. 313 (2012).

was appropriate under the Federal Rules."[15] More specifically, the Court in these two decisions "retired" the lenient "no-set-of-facts test" set forth in *Conley v. Gibson* and replaced it with a more exacting "plausibility" standard.[16]

Accordingly, after *Twombly* and *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[17] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[18] "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."[19] Moreover, "[a]sking for plausible grounds . . . calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [wrongdoing]."[20]

The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[21] No matter the context, however, "[w]here a complaint pleads facts that are 'merely consistent

---

[15] 550 U.S. 544 (2007); 556 U.S. 662, 678 (2009). Wasserman, *supra* at 319–20.

[16] *Iqbal*, 556 U.S. at 670 (citing *Conley v. Gibson*, 355 U.S. 41 (1957)) ("[a]cknowledging that *Twombly* retired the *Conley* no-set-of-facts test").

[17] *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 570).

[18] *Iqbal*, 556 U.S. at 678.

[19] *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. Jan. 11, 2016) (Jordan, J.) (internal quotations and citations omitted).

[20] *Twombly*, 550 U.S. at 556.

[21] *Iqbal*, 556 U.S. at 679.

with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[22]

When disposing of a motion to dismiss, a court must "accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff]."[23] However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."[24] "After *Iqbal*, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss."[25] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[26]

As a matter of procedure, the United States Court of Appeals for the Third Circuit has instructed that:

> Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must tak[e] note of the elements [the] plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.[27]

---

[22] *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557 (internal quotations omitted)).

[23] *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).

[24] *Iqbal*, 556 U.S. at 678 (internal citations omitted).

[25] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.).

[26] *Iqbal*, 556 U.S. at 678.

[27] *Connelly*, 809 F.3d at 787 (internal quotations and citations omitted).

## A. Heightened Standard in Cases Alleging Fraud

In cases alleging fraud as in the case at bar, the pleading requirements of *Iqbal* and *Twombly* are heightened. Federal Rule of Civil Procedure 9(b) requires that a party alleging fraud must state the circumstances "with particularity."[28] This heightened standard gives the party accused of fraud "notice of the claims against them" and "reduces the number of frivolous suits brought."[29] To satisfy this standard, the party alleging fraud must include, at a minimum, "essential factual background that would accompany 'the first paragraph of any newspaper story'— that is, the 'who, what, when, where and how' of the events at issue.'"[30]

## II. DISCUSSION

Mr. Morrison seeks to dismiss Count One of AccuWeather's counterclaim alleging fraudulent concealment arguing that AccuWeather has failed to plead fraud with the specificity required. He further contends that fraud by omission is only actionable in the Commonwealth of Pennsylvania where there is a duty to disclose the information. AccuWeather replies that it has pled sufficient facts to survive a motion to dismiss.

The following allegations appear in AccuWeather's counterclaim:

2. Mr. Morrison fraudulently concealed his employment with gen-E and intentionally led AccuWeather to believe that his last employment

---

[28] Fed. R. Civ. P. 9(b).
[29] *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1418 (3d Cir. 1997).
[30] *In re Suprema Specialties, Inc. Securities Litigation*, 438 F.3d 256 (3d Cir. 2006)(*quoting In re Burlington Coat Factory*, 114 F.3d at 1422).

was with Kelly Blue Book. Said fraudulent concealment was of a material matter, as Mr. Morrison apparently had to leave his position with gen-E because the company was unsuccessful; it was having financial difficulties; it defaulted on a bank loan; and all of its corporate management has not been replaced in an attempt to salvage something out of the company.[31]

AccuWeather goes on to state that had it known of the information concealed by Mr. Morrison, he would have never been hired. Damages claimed include recruiting fees, wasted time and effort, and punitive damages.

Also relevant are AccuWeather's answers to Mr. Morrison's amended complaint. Paragraph 21 indicates that "AccuWeather avers that Plaintiff did not have a 'current position as CFO of gen-E' and that Plaintiff was actually actively seeking work."[32] Paragraph 28 states that "upon information and belief, Plaintiff had no position at gen-E at this time."[33] Paragraph 37 states that "[t]he Defendants were never advised that Plaintiff had any current position, at gen-E or otherwise."[34] Lastly, in paragraph 79, AccuWeather alleges that "Plaintiff did say that he left a job in order to work for AccuWeather, but Plaintiff then alternatively sobbed and apologized for the damage he had done."[35]

---

[31] ECF No. 60, Amended Counterclaim ¶ 2.
[32] ECF No. 60 at ¶ 21.
[33] ECF No. 60 at ¶ 28 (in response to Mr. Morrison's statement that his employers at gen-E had become aware of AccuWeather's ongoing recruitment efforts. ECF No. 20 at ¶ 28.)
[34] ECF No. 60 at ¶ 37 (in response to Mr. Morrison's allegation that he repeatedly stated to Defendants Myers and McDonald that he would only consider leaving his current CFO position at gen-E for a secure and long term CFO position during the interviews on July 29, 2013. ECF No. 20 at ¶ 37.)
[35] ECF No. 60 at ¶ 79 (in response to Mr. Morrison's allegation that he reminded Defendants that he had been assured that the position at AccuWeather provided stability and an employment commitment of at least two years. ECF No. 20 at ¶ 79.)

AccuWeather does not allege that Mr. Morrison affirmatively stated that he was not employed at gen-E or that he was unemployed at the time he was recruited by AccuWeather. Instead, AccuWeather seems to argue that Mr. Morrison failed to disclose—or omitted—information. As Mr. Morrison contends, AccuWeather alleges only "mere silence."

To prove fraud, the following elements must be met: "misrepresentation, a fraudulent utterance thereof, an intention to induce action thereby, justifiable reliance thereon and damage as a proximate result."[36] A "misrepresentation need not be in the form of a positive assertion" and can be "by concealment of that which should have been disclosed . . ."[37] As long as the other elements of fraud are met, concealment can be sufficient to a finding of fraud.[38] "While concealment may constitute fraud, however, mere silence is not sufficient in the absence of a duty to speak."[39] To be actionable, the concealment must have been "intentional and it must relate to material information."[40]

In the case at bar, AccuWeather alleges that the information concealed (that Mr. Morrison had been employed as the CFO of gen-E at the time he was recruited

---

[36] *V-Tech Servcs., Inc., v. Street*, 72 A.3d 270, 275 (Pa. Super. Ct. 2013) (*quoting Wilson v. Donegal Mutual Ins. Co.*, 598 A.2d 1310, 1315 (Pa. Super. Ct. 1991)).
[37] *Id.*
[38] *Id.*
[39] *Id.*
[40] *Sevin v. Kelshaw*, 611 A.2d 1232, 1236 (Pa. Super. Ct. 1992); *see also Gnagey Gas & Oil Co., Inc., v. PA Underground Storage Tank Indemnification Fund*, 82 A.3d 485, 502 (Pa. Commw. Ct. 2013) (*quoting U.S. v. Colton*, 231 F.3d 890, 899 (4th Cir. 2000) ("To create a cause of action, concealment must have been intentional and effective—the hiding of a material fact with the attained object of creating or continuing a false impression as to that fact. The affirmative suppression of the truth must have been with intent to deceive.")).

by AccuWeather) was material to its decision to hire Mr. Morrison in the first place. AccuWeather, however, sets forth no facts to support its contention that the alleged concealment was intentional. AccuWeather's conclusory statement that "Mr. Morrison fraudulently concealed his employment with gen-E" is insufficient to pass muster under Federal Rule of Civil Procedure 12, let alone Rule 9.

AccuWeather contends multiple times that, to its knowledge, Mr. Morrison was not employed at gen-E, or anywhere else for that matter. Mr. Morrison alleges that an exhaustive interview process occurred prior to his hire at AccuWeather and AccuWeather admits that Mr. Morrison interviewed with Mr. Linde (the recruiter), Mr. McDonald, Mr. Myers, seven members of the AccuWeather executive and management team (in State College on July 3, 2013), Mr. Arditte, a friend of AccuWeather's Executive Team, and multiple other interviewers between July 27, 2013 and July 29, 2013. AccuWeather also admits that Mr. Morrison completed a psychological profile questionnaire and a two hour interview with a psychologist as part of his pre-employment/pre-offer psychological profiling process. AccuWeather never alleges that any one of these interviewers asked Mr. Morrison about his then current employment and that Mr. Morrison intentionally concealed the information.[41]

---

[41] Mr. Morrison, in his reply, provides the Court with an email sent to him by Mr. Linde of Chemistry Executive Search who was hired by AccuWeather to recruit Mr. Morrison. ECF No. 67-1. Mr. Morrison requests that this Court alternatively resolve this matter under a Rule 56 motion for summary judgement and consider the email, which refers to Mr. Morrison resigning from his current position to work at AccuWeather, as proof that

AccuWeather does not make any allegations that Mr. Morrison omitted the information from his resume, had his name removed from the gen-E website, requested that his references conceal his occupation at the time, or any other indication that Mr. Morrison was acting intentionally to conceal his employment or lack of employment. In other words, while AccuWeather adequately pleads the "what" under the Rule 9 pleading requirements, it fails to specify the "who," "where," "when," and "how."[42]

Accordingly, Mr. Morrison's motion to dismiss is granted. AccuWeather is granted leave to amend its counterclaim. This Court respectfully notes, however, that this litigation has been ongoing since February 6, 2014 and has already proceeded through three motions to dismiss. AccuWeather should also be advised that significantly more information than that put forth in the amended answer must be pled to survive another motion to dismiss on its fraudulent concealment count.

## III. CONCLUSION

In accordance with the foregoing analysis, Mr. Morrison's motion to dismiss[43] is granted and AccuWeather is granted leave to amend its counterclaim.

An appropriate Order follows.

---

AccuWeather knew that he was employed at the time he was hired by AccuWeather. This Court finds, however, that one email from the recruiter, who was not a direct employee of AccuWeather, while persuasive, is insufficient to rule on this matter under Rule 56 at this current stage in the litigation.
[42] *In re Suprema Specialties, Inc. Securities Litigation*, 438 F.3d at 276.
[43] ECF No. 63.

BY THE COURT:

<u>s/ Matthew W. Brann</u>
Matthew W. Brann
United States District Judge